UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STACY L. REEL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 1:20 CV 197 ACL |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

### MEMORANDUM

Plaintiff Stacy L. Reel brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Reel's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Reel filed her application for benefits on February 25, 2017. (Tr. 215-18.) She claimed she became unable to work on November 12, 2015, due to "lumbar problems," arthritis, high

blood pressure, and high cholesterol.  (Tr. 242.)   Reel was 54 years of age at her alleged onset of disability date.   Her application was denied initially.   (Tr. 114-18.)   Reel's claim was denied by an ALJ on October 16, 2019.   (Tr. 10-19.)   On July 20, 2020, the Appeals Council denied Reel's claim for review.   (Tr. 1-3.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   See 20 C.F.R. §§ 404.981, 416.1481.

In this action, Reel first argues that her "severe impairment met listing 1.04."   (Doc. 14 at 5.)   Reel next argues that the ALJ's assessed RFC "is not supported by substantial evidence, in that, the ALJ improperly discredited [Reel]'s testimony concerning her significant sitting and walking limitations."   Id. at 12.

## II.  The ALJ's Determination

The ALJ first found that Reel last met the insured status requirements of the Social Security Act on December 31, 2018.   (Tr. 12.)   She stated that Reel has not engaged in substantial gainful activity from her alleged onset date of November 12, 2015 through her date last insured of December 31, 2018.   Id.   In addition, the ALJ concluded that Reel had the following severe impairments through the date last insured: degenerative joint disease, facet arthropathy of the lumbar spine, and status post lumbar laminectomy with fixation.   Id.   The ALJ found that Reel did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 13.)

As to Reel's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds or have concentrated

>           exposure to excessive vibration such as from the operation of
>           heavy equipment.

*Id.*

The ALJ found that Reel was unable to perform any past relevant work, but was capable of performing other work existing in substantial numbers in the national economy. (Tr. 17.) The ALJ therefore concluded that Reel was not under a disability, as defined in the Social Security Act, from July 14, 2014, through the date of the decision. (Tr. 18.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on February 24, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured.

(Tr. 19.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

IV.  Discussion

As an initial matter, the Court notes that Reel's insured status is relevant in this case. Reel alleged an onset of disability date of November 12, 2015.  Her insured status expired on December 31, 2018.  To be entitled to benefits under Title II, Reel must demonstrate she was disabled prior to December 31, 2018.  *See* 20 C.F.R. § 404.130.  Thus, the period under consideration in this case is from November 12, 2015, through December 31, 2018.

Reel argues that the ALJ erred in considering the listings and in determining her RFC. The undersigned will discuss these claims in turn.

**1.  Listing 1.04**

Reel first argues that the ALJ erred by finding Reel did not meet Listing 1.04A, the listing for disorders of the spine.

"To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment."  *Blackburn v. Colvin*, 461 F.3d 853, 858 (8th Cir. 2014).  "Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing."  *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011).  The claimant bears the burden of establishing that she meets all the criteria of the relevant listing.  *Blackburn*, 761 F.3d at 858.

Listing 1.04 is for "[d]isorders of the spine"—including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture—"resulting in compromise of a nerve root... or the spinal cord."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.  This compromise of the nerve root or spinal cord must be combined "with" one of three evidentiary components: (A) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor

Page **8** of **16**

loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)";[1] (B) "spinal arachnoiditis" that is "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging"; or (C) "lumbar spinal stenosis resulting in pseudoclaudication" that is "established by findings on appropriate medically acceptable imaging." *Id*. at § 1.04(A), (B), (C).

The ALJ stated that Reel's degenerative joint disease of the lumbar spine did not satisfy the criteria of Listing 1.04. She explained that "the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (Tr. 13.)

Reel argues that her back condition met Listing 1.04A. She contends that the ALJ's finding of lack of evidence of nerve root compression is not supported by substantial evidence. Reel argues that there is "overwhelming medical evidence that a nerve root compression existed at L4-L5." (Doc. 14 at 6.) In support of this argument, Reel cites excerpts from the medical evidence, highlighting the following findings prior to her date last insured: an August 29, 2016 MRI of the lumbar spine showing mild to moderate bilateral foraminal stenosis at L4-5 and crowding of the nerve roots at this level (Tr. 376); and the October 2, 2018 finding on examination of "positive straight leg raise left" (Tr. 813) by Brandon Scott, D.O. She also cites medical evidence from after the expiration of her insured status.

---

[1]The Commissioner's listings for musculoskeletal disorders changed effective April 1, 2021. Reel initially argued that the new listing should apply in this case. (Doc. 20.) After additional briefing was conducted on this issue (Docs. 25, 26), Reel now concedes that the version of Listing 1.04 in effect during the relevant period governs in this case. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (December 3, 2020); *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 966-67 (8th Cir. 2003) (Court applies listing in effect at time of final administrative decision).

Defendant responds that the ALJ properly found that Reel did not meet or equal Listing 1.04A, because she did not demonstrate positive sitting and supine straight leg raise tests during the relevant period. The undersigned agrees.

The ALJ acknowledged Reel's positive straight leg raise testing in October 2018. (Tr. 15.) These records do not, however, indicate whether the testing was performed in the sitting or supine position, both of which are required under Listing 1.04A. Further, Reel's straight leg raise testing was negative on September 20, 2016 (Tr. 348) and on September 5, 2017 (Tr. 420). The single instance of a positive straight leg raise test in unspecified positions does not satisfy the requirement of Listing 1.04A. *Watson v. Colvin*, 2016 WL 7840709 at *6 (M.D. La. Dec. 22, 2016) ("A single instance of a positive straight leg raising test…[which] failed to indicate whether it was performed in both the seated and supine positions, is insufficient to stratify Listing 1.04A") (compiling cases); *Scott v. Saul*, 2:19-CV-00053-SNLJ, 2020 WL 3498146, at *5 (E.D. Mo. June 29, 2020).

In sum, although Reel points to evidence of nerve root compression, the record does not demonstrate the presence of motor loss or positive straight leg raise testing in the seated and supine positions. As such, this Court cannot say the ALJ erred in determining that Reel's impairments failed to meet the criteria specified in Listing 1.04A. *See Vossen v. Astrue,* 612 F.3d 1011, 1015 (8th Cir. 2010) (substantial evidence supported ALJ's decision rejecting claimant's argument that impairments met Listing 1.04A where, despite claimant pointing to "records showing nerve root compression," the total record exhibited contrary evidence such as an MRI showing "no cord or nerve root impingement" and a neurological examination showing "normal" results); *Troupe v. Berryhill*, 2017 WL 4038146 at *4 (E.D. Mo. Sept. 13, 2017) (substantial evidence supported ALJ's determination that claimant's impairment did not

meet Listing 1.04A where records on treatment success, severity, and duration did not favor such a finding).

### 2.  RFC

Reel next argues that the ALJ's RFC determination is not supported by substantial evidence, in that the ALJ improperly discredited Reel's subjective complaints.  Specifically, Reel argues that she testified regarding significant sitting and walking limitations.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.  20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.  Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.  *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).  "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."  *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).  Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

The ALJ noted that Reel reported in her Function Report that sitting causes numbness and pain, and she can only walk a block.  (Tr. 14, )  She also summarized Reel's testimony at the hearing regarding her limitations as follows:

> She stated that she cannot walk very far, noting that she can hardly feel her legs some days and she falls.   She stated that sitting is horrible on her lower back and indicated she can sit for 30 to 40 minutes before needing to change positions. She avoids bending and stooping and uses a grabber device or gets assistance from another person.   She indicated she could not pick up and carry a four-pound file.

(Tr. 14.)

Part of the RFC determination includes an assessment of a claimant's credibility regarding subjective complaints.   Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole."   *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).   The *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.   *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 416.929(c)(3).

Reel argues that the ALJ failed to discuss how Reel's daily activities supported or detracted from her subjective complaints, which renders the ALJ's credibility assessment and resulting RFC determination not supported by substantial evidence.

The ALJ adequately considered the *Polaski* factors.   First, she pointed out that Reel stopped working when her hours were cut at her last position.   (Tr. 14, 242.)   The fact that Reel stopped working for reasons other than her alleged disability detracts from her credibility.   *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (finding it relevant to credibility that claimant leaves work for reasons other than for claimant's medical condition).

The ALJ next discussed the objective medical evidence and found it was not entirely supportive of Reel's subjective complaints. Although an ALJ may not disregard a claimant's complaints based solely on objective medical evidence, it is one factor the ALJ may consider. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (citing *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000)). The ALJ stated that Reel's back pain was treated effectively for several years with medications and injections. (Tr. 14.) The record supports this. Specifically, medical records indicate Reel underwent lumbar epidural steroidal injections regularly during the relevant period. (Tr. 777, 844, 872-73, 906, 950.) She routinely reported that the injections provided 75 percent pain relief, which lasted between two and two-and-a-half months. *Id.* The ALJ also noted that Reel declined surgical treatment when offered in October 2018. (Tr. 14, 993, 995.) At this time, she reported her pain level was only a three out of ten, and opted to delay surgery for a year. *Id.*

The ALJ acknowledged that Reel's reports of pain increased, and the efficacy of her pain management treatments began to diminish, but noted that this did not occur until after her insured status had expired in 2019. (Tr. 16.) Reel ultimately underwent laminectomy surgery on August 8, 2019. (Tr. 16, 1038.)

Because the medical record demonstrates that Reel's back pain was effectively managed during the relevant period, it cannot be said that she was suffering from disabling pain. *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability").

The ALJ also discussed the objective findings from imaging studies and examinations. (Tr. 15-16.) Reel underwent an MRI of the lumbar spine in August 2016, which revealed degenerative anterolisthesis at L4-5, with moderately severe spinal stenosis and mild to moderate

foraminal stenosis. (Tr. 15, 376.) The ALJ noted that a subsequent MRI in November 2017 revealed minimal changes. (Tr. 15, 446.) It was not until after Reel's date last insured—in May 2019—that MRI findings revealed worsening stenosis at L4-5. (Tr. 15, 990.) Physical examinations have typically shown an antalgic gait and some lumbar tenderness, but full range of motion in the lumbar spine, negative straight leg raise tests, and an ability to ambulate with a steady gait. (Tr. 15, 473, 518, 522, 554, 603, 604, 703.)

With regard to Reel's daily activities, the ALJ stated that Reel only reported difficulties with yard work, housework, and cooking during the relevant period. (Tr. 15, 682, 873.) At an August 1, 2017 office visit, Reel reported that she was babysitting that summer. (Tr. 15, 414.) The following month, she reported to her physician that she was able to walk for fifteen minutes, sit for one hour, and drive a vehicle for one hour. (Tr. 419.) In her Function Report completed in April 2017, Reel indicated that she cooked dinner every evening, did laundry, swept, took her dogs out several times a day, drove a car, shopped for groceries, met friends for lunch once a week, attended church, and occasionally babysat her grandchildren. (Tr. 250-53.) The ALJ found that Reel's reported activities were not limited to the extent one would expect, given her complaints of disabling pain and limitations. (Tr. 17.) *See Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (Significant daily activities may be inconsistent with claims of disabling pain).

In sum, the ALJ properly considered the *Polaski* factors, including Reel's daily activities, in assessing Reel's subjective complaints. She concluded that Reel's allegations of total disability were not fully consistent with the record. (Tr. 17.)

The ALJ determined that Reel had the RFC to perform sedentary work, with the following additional limitations: can occasionally climb ramps and stairs, balance, stoop, kneel,

crouch, and crawl; cannot climb ladders, ropes, or scaffolds; and cannot have concentrated exposure to excessive vibration, such as from the operation of heavy equipment. (Tr. 13.) She stated that her determination was supported by the totality of evidence, including the objective medical findings, clinical findings on examination, as well as Reel's partially consistent testimony. (Tr. 16-17.) The ALJ explained that Reel's impairments require a reduction of her RFC to a range of sedentary work. (Tr. 17.)

In addition to the medical evidence discussed above, the ALJ considered the opinion evidence. State agency physician Nancy Ceaser, M.D., completed a Physical Residual Functional Capacity Assessment on September 7, 2017. (Tr. 107-10.) Dr. Ceaser expressed the opinion that Reel was capable of lifting twenty pounds occasionally and ten pounds frequently; standing or walking for a total of two hours; sitting for six hours in an eight-hour workday; occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; occasionally stooping and crawling; and should avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. 107-09.) The ALJ indicated that she was assigning partial weight to Dr. Caeser's opinions, because the evidence supports no limitation in Reel's ability to tolerate extreme cold and greater restrictions in her ability to lift, crouch, kneel, and climb. (Tr. 16.)

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. In her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record. *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions). The RFC is consistent with—yet more restrictive than—the opinion of the state agency physician. As discussed above, the ALJ properly evaluated Reel's subjective complaints of pain and limitations and found they were not entirely supported by the record. The ALJ discussed the

medical record and found that Reel's pain was adequately controlled with her pain medication regimen during the relevant time.   She also noted that Reel was capable of performing significant daily activities, including babysitting her grandchildren, shopping, and visiting with friends regularly.   The ALJ nonetheless credited Reel's allegations in imposing a significantly restricted RFC.   Reel has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

      Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

                                                             /s/ *Abbie Crites-Leoni*
                                                             ABBIE CRITES-LEONI
                                                              UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of February, 2022.